E-filing

FILED

DEC 1 3 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
OAKLAND CALIFORNIA

Judy McDermott
366 Hibiscus Lane
Suisun City CA 94585-3813
707/428-6513
Pro Se

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRIT OF CALIFORNIA

| | |
|---|---|
| JUDY A. MCDERMOTT, | CIVIL CASE NO: |
| Plaintiff, Pro Se | |
| | **COMPLAINT** |
| V. | C07 - 06 |
| | (Appeal of Agency Decision) |
| JOHN E. POTTER, | (Agency Case No. 66-000-0037-06) |
| U.S. POSTMASTER GENERAL | |
| U.S. POSTAL SERVICE | **JURY TRIAL DEMAND** |
| (CAPITAL METO AREA) AGENCY) | |
| UNITED STATES OF AMERICA | |
| Defendant | |

### I. PARTIES

1. Plaintiff, **JUDY A. MCDERMOTT**, is a citizen of the Untied States, and has been at all times herein material, a resident of Solano County, State of California. At the relevant times mentioned in this complaint, plaintiff was an employee of the United States Postal Service (USPS), employed as a United States Postal Inspector, ISLE-13, located at the San Francisco Bulk Mail Center (BMC), 2501 Rydin Road, Richmond, California, Contra Costa County.

2. The plaintiff for all relevant periods for this Cause of Action hereto worked at the above location and reported to managers located at the 390 Main Street Facility, 3rd Floor,

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

**Page 1 - COMPLAINT**

San Francisco, California at the time she filed her EEO complaint and this complaint herein against the agency.

3.    Defendant John Potter is Postmaster General of the United States located in Washington DC, and, in that capacity, is responsible for the operation of the United States Postal Service and all Divisions therein. The United States Postal Service is an employer of more then five hundred employees.

## II. JURISDICTION AND VENUE

4.    **Jurisdiction.** This Court has jurisdiction over Plaintiff's federal claims for relief pursuant to 42 U.S.C. § 2000e et. seq. and 28 U.S.C. § 1331.

5.    **Venue.** Venue is properly laid in the Northern District of California pursuant to Title 28 U.S.C. § 1391(b).

6.    **Intradistrict Assignment:** This lawsuit should be assigned to the Oakland Division of the court because a substantial amount of the acts and omissions giving rise to this lawsuit occurred in this District and plaintiff was employed in Contra Costa County during the period addressed in Cause of Action in this Complaint.

7.    On April 17, 2006, Plaintiff requested EEO counseling. On April 22, 2007 plaintiff received the forms to file a pre-EEO complaint which she filed on April 28, 2006.

8.    On August 16, 2006, Plaintiff filed a formal complaint of discrimination with the United States Postal Service ("USPS"), Case Number 66-000-0037-06, alleging a hostile work environment, sex discrimination (female), and reprisal for prior EEO activity within, the

**Page 2 - COMPLAINT**

appropriate 45 day time period in accordance with 29 CFR Sections 1614.105(a)(1) and 1614.106.

9.    This EEO complaint was the 15th EEO complaint filed by plaintiff from 1998 up until the date of the August 16, 2006 EEO complaint.

10.    On September 9, 2006, plaintiff received the Agency's Final Agency Decision (FAD) dated September 5, 2006 (Agency No. 66-000-0037-06).  The FAD dismissed the plaintiff's EEO.  The FAD advised plaintiff she had 30 days from the date of receipt of the FAD to file an appeal to the Office of Federal Operations (OFO), EEOC.

11.    On or about October 4, 2006, plaintiff appealed the FAD to the OFO.

12.    On or about July 6, 2007, plaintiff received a response from the OFO dated June 28, 2007, affirming the Agency's FAD (Appeal No 0120070109).  Plaintiff was advised she had 30 days to submit a Motion to Reconsider to the OFO within 30 days of receipt of their response.

13.    On or about July 19, 2007, plaintiff submitted a Motion to Reconsider to the OFO.

14.    On September 22, 2007, the plaintiff received OFO's response dated September 10, 2007, denying plaintiff's Motion to Reconsider (Appeal No 0120070109, Request No. 0520070784).  The OFO advised the plaintiff had 90 days from the date of receipt, to file a civil action in this case.

15.    Plaintiff has exhausted all administrative remedies under 42 U.S.C. 2000e-16(c) and 29 CFR 1614, and is filing this civil action within the statutory requirements of 90 days.

**Page 3 - COMPLAINT**

## III. STATEMENT OF FACTS

16.    Plaintiff began her career with the United States (U.S.) Postal Service on or about December 2002 in Spokane, WA. On or about June 1986 she was hired as a Postal Inspector working for the United States Postal Inspection Service (USPIS), which is the law enforcement branch of the U.S. Postal Service.

17.    Plaintiff was initially assigned to work in Cincinnati, Ohio, where she was assigned to a team conducting postal financial audits, and later was assigned to a team conducting investigations involving postal employees filing fraudulent worker's compensation claims.

18.    While in Cincinnati, plaintiff received numerous accommodations, awards and/or year-end merit awards for her work accomplishments.

19.    On or about January 1990 plaintiff was transferred to the Oakland Division of the USPIS (which later was merged with and became the San Francisco Division of the USPIS), where she was initially assigned to a Capital Investment team.

20.    Local USPIS management officials for the San Francisco (SF) Division of the USPIS consist of an Inspector In Charge (INC) and two Assistant Inspector In Charges (AICs) located at 350 Main Street, San Francisco, CA.

21.    Plaintiff reports to a Team Leader, and the Team Leader reports to an AIC, and the two AICs report to the INC.

22.    On or about 1993, Plaintiff was reassigned to the Unabom Task Force where she remained for approximately one year.

**Page 4 - COMPLAINT**

23.     In approximately mid-1994 plaintiff was assigned to the Internal Crimes (IC) team located at the San Francisco Bulk Mail Center (BMC) Richmond, CA, responsible for investigating postal employee mail theft, reporting to supervisor Mark Aasmundstad.

24.     Plaintiff continued to receive numerous accommodations, awards and merits for her work, including far-exceeds year-end merits in 1993 and 1996 for her work on the Capital Investment team and the Internal Crimes team.

25.     In 1998 Plaintiff began to experience what she believed to be discriminatory treatment by a male co-worker, which she believed was based on her gender, when she was the only one on the team excluded from his investigations.

26.     When plaintiff reported the discriminatory treatment to Mark Aasmundstad, her male supervisor, her complaint was unexpectantly met with hostility and criticism of her work performance as compared to male team members.

27.     In 1998 plaintiff had 14 Internal Crimes (IC) identifications, while male team members had 3 and 5 identifications.   For this same time period plaintiff had 12 cases with arrests or on-going administrative action compared to 6 cases each for the two fellow team members.

28.     Unknown to plaintiff at the time she reported the discrimination to Aasmundstad, he was named in at least three prior EEOs by three females postal inspectors, and was currently involved in an investigation as a result of complaints filed by two of the female postal inspectors.

29.     After plaintiff came forward with her initial complaint of discrimination in April 1998,     she subsequently experienced on-going discrimination, harassment, and

**Page 5 - COMPLAINT**

1   retaliation from her supervisor, male team members, managers, and others in the Division

2   who joined in the harassment and retaliation against her.

3       30.    From 1998 thru at least 2000, as a result of speaking out about the on-going

4   discrimination and retaliation, plaintiff was subsequently denied a preferred territory

5   assignment, given a disparately larger workload than team members, denied equipment to

6

7   perform her job, denied assistance in her investigations, denied monetary awards to which she

8   was entitled, and was sexually assaulted during a training class.

9       31.    Plaintiff's work environment became increasingly more hostile.  Co-workers

10   continued to "shun" her, and make negative and derogatory comments about her.  A male

11

12   supervisor whom she had never worked with and who was domiciled in another city put in

13   writing three times that she was the "problem" in the Division and then distributing his

14   comments to other male supervisors during a meeting.

15       32.    Supervisors, co-workers, and at least one manager would walk by plaintiff and

16   ignore her.

17

18       33.    Plaintiff began to experience physical and mental symptoms as a result of the

19   agency's continuing illegal conduct.  Beginning in June 1998 she started to receive medical

20   treatment for symptoms of: chest pains, anxiety, depression, tearfulness, headaches and

21   migraines, and sleeplessness.

22

23       34.    Plaintiff requested intervention from Don Davis, the Inspector in Charge (INC)

24   of the San Francisco Division of the USPIS at that time. However, Davis took no action to

25   assist plaintiff in any manner or to remedy the situation, and allowed the illegal behavior to

26   continue.

27

28

**Page 6 - COMPLAINT**

35.    The Agency had a "hands-off" approach to the sexually-hostile atmosphere with which the plaintiff was faced.

36.    Management subsequently "downplayed" the concerns plaintiff and the two female inspectors had regarding team leader Aasmundstad.

37.    As a result of the above described Agency conduct, plaintiff subsequently filed a series of seven EEO complaints from approximately 1998 thru December 2000. Plaintiff alleged discrimination based on gender, and retaliation for prior EEO activity, in which others joined in the harassment against her, resulting in a hostile work environment (HWE).

38.    INC Don Davis retired from the agency in approximately 2000 and was subsequently replaced with Alan Kiel who became the new INC of the SF Division.

39.    Plaintiff continued to file EEO complaints naming INC Kiel and other SF managers as discriminating officials from approximately 2001-2002.  She cited on-going discrimination, harassment, and retaliation, which included management threatening to send her for a fitness for duty medical exam, denying her a detail opportunity, and denying her adequate official time to address EEOs, all of which exacerbated an already HWE.

40.    Kiel and his two AICs were removed from their positions in 2003 after plaintiff organized a petition signed by 49 employees, addressing concerns of fraud, waste, abuse, mismanagement and discrimination, and submitted documentation and exhibits in support of the 2003 petition.

41.    Interim managers were detailed to the SF Division to replace the three managers who were removed from their positions.  In approximately June 2003, John Wisniewski was detailed as the acting INC, James (Jim) Donnelly was detailed as the Acting

**Page 7 - COMPLAINT**

AIC, and Gregory (Greg) Campbell, Jr., a supervisor in the SF Division was detailed as an acting AIC.

42.    The discrimination, harassment and retaliation continued with the interim SF managers targeting plaintiff due to her prior EEO activity and her role in the removal of the three SF managers from their positions.

43.    Almost immediately after the interim managers arrived in the SF Division, plaintiff was punitively reassigned from Richmond, CA to San Francisco, CA to the Threat and Assault Team.

44.    The Threat and Assault team was known in the Division as being comprised of new inspectors, "non-performers" and/or those in "trouble" with management.

45.    Plaintiff was subsequently forced to remain on this punitive assignment for 3 ½ years, much longer than any other inspector, most of whom remained in the assignment for only one year.

46.    While on the Threat and Assault assignment, plaintiff was forced to perform an assignment that consisted of largely non-criminal work, which was below her experience, background, and skill level, given her past accomplishments and awards.

47.    Plaintiff believed her punitive transfer was a result of her prior EEO activities, including her role in the 2003 petition and the removal of the three SF managers from their positions.

48.    On or about August 4, 2003, plaintiff released a letter and 92 exhibits outside the agency to David Fineman, the chairman of the Postal Board of Governors (BOG). The letter was also released to Senator Dianne Feinstein, herein referred to as the "Fineman"

Page 8 - COMPLAINT

letter. The "Fineman" letter addressed the same issues addressed in the 2003 petition and supporting documents.

49.     Plaintiff requested that BOG Chairman Fineman not release the "Fineman" letter to the USPIS, fearing retaliation. Plaintiff requested that an outside agency be brought in to investigate allegations.

50.     By letter dated August 12, 2003, Lawrence (Larry) Katz, USPIS Chief Legal Counsel, advised plaintiff that BOG Chairman Fineman had released her letter and exhibits to him to investigate.

51.     The "Fineman" letter included various allegations of Agency misconduct addressing all three of the SF interim managers.

52.     Plaintiff sent the "Fineman" letter during the same time that Karla Corcoran, Inspector General (IG) for the Postal Service was being investigated. Corcoran subsequently stepped down from her position as the Postal IG.

53.     At least one of the interim SF managers was subsequently investigated by the Internal Affairs Division (IAD) of the USPIS for allegations made in the "Fineman" letter.

54.     On or about September 10, 2003, INC William (Bill) Atkins reported to the SF Division as the new Inspector in Charge (INC), along with Robert Bethel who was the Acting AIC, while interim managers Wisniewski and Donnelly returned to their former Divisions.

55.     On September 10, 2003, INC Atkins gave a speech to the SF Division as the new INC, in which he addressed the high number of EEOs being filed in the SF Division, stating that frivolous EEOs hurt the Division.

Page 9 - COMPLAINT

56. On September 11, 2003, within approximately one month of the release of the "Fineman" letter, plaintiff was investigated by the Internal Affairs Division (IAD) of the USPIS for an alleged verbal threat she made to Linda Ng, Support Clerk, on or about August 21, 2003. One of the interim SF managers contacted headquarters' managers to initiate the investigation.

57. During the IAD investigation, Ng, the "alleged victim" stated she did not feel threatened by plaintiff's comment to her, and did not feel it was a "credible" threat. After the IAD investigation, Ng sent the plaintiff an email stating that she was sorry and that she did not know how things got so out of hand.

58. Sally Diaz, the supervisor of the Threat and Assault team, told the interim SF managers that plaintiff's comment to Ng was not a "credible threat," and should not have been referred to Internal Affairs, but should have been handled locally.

59. Sally Diaz stated that interim SF manager AIC Donnelly had made a worse comment than complainant, yet IAD was not contacted to investigate him.

60. Ng stated Jimmy Woo, a male postal inspector previously threatened her on several occasions. Woo was not investigated by IAD, but was counseled by supervisor Diaz.

61. Plaintiff believed the IAD investigation was initiated by the interim SF managers, with the concurrence of headquarters' managers, in order to further harass and retaliate against her for her prior EEO activity, including the 2003 petition, and the "Fineman" letter in which all three SF managers were named as being involved in misconduct.

62. At the conclusion of the IAD investigation of plaintiff, INC Atkins took no disciplinary action against plaintiff for the alleged verbal threat against Ng.

**Page 10 - COMPLAINT**

63. Atkins refused to provide plaintiff anything in writing indicating he was not taking disciplinary action against her, disparate from one of the interim SF managers (male) who was investigated by IAD, who did receive a letter from Atkins stating no disciplinary action was taken against him.

64. Plaintiff continued to seek medical treatment for the physical and mental effects of the on-going illegal conduct targeting her and the ensuing HWE.

65. Plaintiff continued to file EEOs from 2001 up until 2007, to include the punitive job transfer in July 2003 to the Threat and Assault Team, and the IAD investigation in September 2003, which she believed to be gender discrimination, and retaliation for prior EEO activity and speaking out about the illegal conduct within the Agency, exacerbating the already HWE.

66. In August 2004, plaintiff participated in an eight day EEOC hearing in San Francisco, California before EEOC Administrative Judge (AJ) David Kelley in which the first seven of her EEO complaints were heard.

67. A ruling by AJ Kelley was not issued at the end of the hearing; However, in a subsequent letter dated October 7, 2005, AJ Kelley put in writing that he intended to find in plaintiff's favor on certain of her claims for the EEOs heard during the 8/04 EEOC hearing.

68. The Agency was on notice as early as October 2005 that plaintiff had prevailed on some of her EEO complaints; Yet, the illegal behavior targeting her continued, for which she continue to file EEOs.

69. During this time the SF INC of the USPIS was Bill Atkins, and the AICs were Marian Post and Araceli (Sally) Diaz.

Page 11 - COMPLAINT

70.    Plaintiff continued to be a target of illegal conduct by management. After filing EEOs beginning in 1998, plaintiff no longer received monetary awards for any of her accomplishments.

71.    In January 2006 plaintiff was the first postal inspector ever denied attendance at a pre-retirement training class in the city of her choice.

72.    INC Atkins stated he had a "policy" of not allowing pre-retirement training outside of San Francisco, because of the appearance of, "government largess," even though there was no additional cost to the agency. INC Atkins' "policy" was never provided to the plaintiff.

73.    Plaintiff provided the names of three SF male postal inspectors who were allowed to attend this training in the city of their choice.

74.    Every other postal inspector across the country has been allowed to attend the pre-retirement training in the city of choice, up until plaintiff made the request.

75.    In the pre-retirement training class held in SF in early 2006, inspectors from other cities in the country attended the training in SF.

76.    Every postal inspector is allowed to attend this pre-retirement training class as a term, condition and benefit of their employment, while the agency pays for the cost of the class only.

77.    On January 27, 2006, plaintiff sent an email to her supervisor, Jeff Kovacs, asking for a response on her attending the pre-retirement training class in the city of her choice. Kovacs responded to plaintiff in an email stating that AIC Post had a problem with "her" attending in the city of her choice.

**Page 12 - COMPLAINT**

78.    On January 30, 2006, plaintiff sent an email to AIC Post requesting a response in writing explaining why plaintiff was being denied this pre-retirement training in the city of her choice when every other postal inspector before her had been allowed this benefit, especially when there was no additional cost to the agency, and it appeared plaintiff was being treated disparately. Plaintiff received no response to her request.

79.    On March 1, 2006, plaintiff was advised by co-worker Inspector Jennifer Lim that she overheard INC Atkins on or about January 30, 2006, in a public hallway at the 350 Main Street facility in San Francisco, loudly speaking to USPIS Attorney Ed Lawee.

80.    Lim advised plaintiff that Atkins was talking about the pre-retirement training class and asking Ed Lawee whether "Judy" could file an EEO on the issue.

81.    Lim relayed to plaintiff that she heard Atkins calling plaintiff a "fucking bitch," stating he did not want her in San Francisco and did not want her in the San Francisco Division.

82.    Lim initially told plaintiff she would provide a written statement regarding the incident, but then stated she feared retaliation if she provided a written statement.

## CAUSE OF ACTION
### (VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED; 42U.S.C. 2000e ET SEQ.)

83.    Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 82 inclusive, of this complaint and makes them a part of this instant Cause of Action as though fully set forth herein.

**Page 13 - COMPLAINT**

84.     On May 4, 2006, plaintiff received a telephone call from USPS EEO counselor Deborah G. Sutton, regarding a pending EEO in which plaintiff was the first postal inspector in San Francisco who was singled out and denied attendance at a pre-retirement training class in the city of her choice (EEO #14, Agency No. 6H-000-0001-06). Sutton asked plaintiff if she wanted to participate in redress on this particular EEO complaint.

85.     Plaintiff advised Sutton that she would not be participating in redress with management and that she would be filing an EEO on the pre-retirement training class issue.

86.     Plaintiff explained to Sutton that she learned Bill Atkins, INC, had called her a "fucking bitch" in a public hallway at work after learning that she would be filing an EEO on being denied the pre-retirement training class in the city of choice, and that Atkins had also stated he did not want plaintiff in San Francisco and did not want her in the San Francisco Division.

87.     Plaintiff advised Sutton she was not going to participate in re-dress with INC Atkins and would be filing an EEO.

88.     The EEO Dispute Resolution Specialist (DRS) Inquiry Report from Deborah Sutton dated April 20, 2006, for EEO (Agency Case No. 6H-000-0001-06), verified that Sutton contacted the plaintiff on April 4, 2006, for an initial interview, this date being the relevant date in the CAUSE OF ACTION addressed in this complaint.

89.     Just hours after plaintiff spoke with EEO counselor Sutton on May 4, 2006, plaintiff was contacted by her supervisor, Jeff Kovacs, who advised plaintiff that he needed to speak with her.

Page 14 - COMPLAINT

90.     Plaintiff met with Kovacs that same day and Kovacs said earlier that day he had been called into INC Atkins' office and that AIC Marian Post, his supervisor, was also present.

91.     Kovacs said INC Atkins was upset about what he described as a rude and inappropriate email plaintiff sent to a Postal Police Officer (PPO), and that plaintiff had failed to respond to an employee threat and assault incident.

92.     INC Atkins had no documents that he provided to Kovacs at the time he made allegations to Kovacs about plaintiff's behavior. AIC Post, Kovac's supervisor, did not participate in the conversation.

93.     During this meeting, Atkins strongly implied to Kovacs that he should counsel plaintiff and insure that the behavior did not happen again.

94.     During this meeting AIC Post did not make any comments. Kovacs reports to AIC Post.

95.     Atkins' demeanor and comments to Kovacs during this meeting, as well as the timing of this meeting, lead the plaintiff to believe that EEO counselor Sutton had contacted INC Atkins immediately after her discussion with plaintiff earlier that morning.

96.     Plaintiff explained to Kovacs that she received an email from a postal police officer (PPO) stating that an incident report (IR) involving an alleged employee threat was attached to an email he sent her, when it was not. Plaintiff explained that she requested the PPO send the IR to her. The PPO supervisor, Dave Butler, then sent an email to the PPO asking why a postal inspector was not notified earlier about the threat incident. In defense of the PPO not sending something earlier to an inspector, plaintiff sent an email to the PPO with

**Page 15 - COMPLAINT**

a copy to Butler stating, **"This is not the type of incident where the USPIS would get involved. It is not even close to being a credible threat. I just wanted the statement to include with the IR for my file."** This was the email that INC Atkins was referring to that was allegedly so rude and inappropriate that he had to discuss it with Kovacs, along with Kovacs' supervisor, AIC Post.

97.     Plaintiff explained to Kovacs that Atkins coming to him immediately after learning she was filing another EEO and that plaintiff was aware of the negative comments Atkins made about her in a public forum, was not about an email she sent 11 days earlier, but was retaliation and harassment for filing another EEO.

98.     Plaintiff explained to Kovacs about the call earlier that morning from EEO counselor Sutton, and that plaintiff told the EEO counselor about Atkins' "fucking bitch" comment. Plaintiff explained that she told the EEO counselor that she would not be participating in redress and would be filing an EEO, the fifth EEO naming Bill Atkins as a discriminating official at that time.

99.     Up until Sutton contacted Atkins on May 4, 2006, Atkins was unaware that plaintiff had knowledge of the derogatory comments he made about her in a public hallway while speaking to Inspector Ed Lawee, or that others in the Division had heard him.

100.    On April 5, 2006, Kovacs sent an email to AIC Post, with a copy to plaintiff, indicating plaintiff had been "counseled" for the incident involving the email to the PPOs.

101.    Kovacs' email indicated he did not know what Atkins was referring to regarding some of the comments Atkins had made about plaintiff not responding to a threat

**Page 16 - COMPLAINT**

incident. Kovacs' email went on to state that the threat incident had happened 12 days earlier and as such was untimely addressed by management.

102.    Kovacs believed the verbal counseling was disciplinary in nature and therefore placed a copy of his April 5, 2006 email in plaintiff's Level 2 Team folder.

103.    Plaintiff took exception to the email Kovacs sent to management indicating she had been "counseled," believing that "counseling" was the first step in disciplinary action, and she was now set up for more serious disciplinary action in the future.

104.    Plaintiff subsequently sent an email to Kovacs on April 16, 2006, with copies to Atkins and Post, stating that she disagreed that she had done anything wrong regarding the email she sent to the PPO, and asked that managers Atkins and Post provide her something in writing explaining what specifically in her March 24, 2006 email that they believed to be, "disrespectful, rude and/or inappropriate." Management never responded to plaintiff's email request.

105.    A Federal employee has Federal rights which includes filing an EEO complaint without being discriminated or retaliated against for using those rights. This is a term, condition, and benefit of their Federal employment.

106.    Plaintiff believed that Atkins actions, taken on the heels of numerous EEOs naming him as a discriminating official dating back to 2003, emphasized the extent of the HWE that plaintiff was exposed to, the constant scrutiny she was under, and the ongoing pattern of discrimination and retaliation targeting her. This is especially so since the agency was found liable on November 30, 2006, for illegal conduct against plaintiff, including a

**Page 17 - COMPLAINT**

HWE, and was on notice almost one year prior to that, that plaintiff had prevailed in some of her EEOs from the August 2004 EEOC hearing.

107.    Plaintiff believed that management was attempting to place disciplinary action against her on the record, in an attempt to be able to take progressive discipline against her in the future, in an effort to remove plaintiff from her job.

108.    Plaintiff stated there were additional attempts to set her up for disciplinary action. In 2006 a supervisor gave plaintiff a disproportionately larger workload than team members and then several months later told plaintiff he would hate to see her not make her year-end goals. This same supervisor, Quan Howard, also stated in 2006 that he wanted to send plaintiff for a Fitness for Duty medical exam.

109.    By the Agency's conduct as aforesaid, Defendant discriminated against plaintiff because of her gender and in retaliation for prior EEO activity when disciplinary action was taken against her without just case, after learning she was refusing to participate in redress and was filing an EEO, which taken together with past EEOs and current EEOs, exacerbated an already HWE, all in violation of Title VII of the Civil Rights Act of 1964, as amended.

110.    On or about April 17, 2006, plaintiff timely contacted the Agency and requested EEO Counseling.

111.    On or about April 22, 2006, Plaintiff received PS Form 2564-A, Information for Pre-Complaint EEO Counseling, which she timely completed and mailed to the Agency on or about April 28, 2006. Plaintiff alleged discrimination based on gender, age, retaliation for prior EEO activity, and a Hostile Work Environment (HWE).

**Page 18 - COMPLAINT**

112.    Plaintiff heard no response from the Agency regarding her April 28, 2006 pre-EEO complaint; Therefore, she sent a letter to the Agency on or about July 22, 2006, requesting the paperwork to file a final EEO.

113.    On or about August 8, 2006, plaintiff received a "Final Interview" letter from the Agency dated August 3, 2006, stating that plaintiff had "alleged discrimination based on retaliation for prior EEO activity when on April 4, 2006 you were given a verbal warning by your supervisor based on incorrect information."

114.    In the "Final Interview" letter the Agency denied any discriminatory motive for the discussion Team Leader Jeff Kovacs had with plaintiff. The letter stated the discussion was prompted by a March 27, 2006, response to Security Force personnel regarding credible threats. The agency stated the discussion was not a "verbal warning." Plaintiff was advised she had 15 calendar days from the receipt of the "Final Interview" to file a formal complaint.

115.    On or about August 16, 2006,  Plaintiff timely completed and mailed (within 15 days of receipt of the paperwork) a formal EEO complaint with the agency alleging discrimination based on gender and retaliation for prior EEOs, and a hostile work environment (Agency Case No. 66-000-0037-06).  This EEO named as the discriminating officials: William Atkins, SF Inspector in Charge, Marion Post, SF AIC, Lee Heath, Chief Postal Inspector and Lawrence Katz, Chief Legal Counsel.

116.    Plaintiff filed a timely pre-EEO complaint and Final EEO complaint and thus met the statutory requirements for filing a complaint of gender and reprisal discrimination in a timely manner pursuant to 29 CRF Section 1614.105(a)(1), which requires complaints of

**Page 19 - COMPLAINT**

1    discrimination be brought to the attention of an EEO counselor within 45 days of the date of

2    the matter alleged to be discriminatory.

3    117. Plaintiff's EEO stated that immediately after Atkins learned she refused

4    redress and that she was filing another EEO, and was told plaintiff was aware he had called

5    her a "Fucking Bitch," Atkins went to plaintiff's supervisor about an allegedly rude and

6

7    inappropriate email she sent 11 days earlier. This was done to have plaintiff's supervisor take

8    disciplinary action against her to set her up for further progressive disciplinary action in the

9    future.

10

11   118. Plaintiff's EEO stated that verbal counseling was the first step in disciplinary

12   action and that management was setting her up for further disciplinary action in the future by

13   verbally counseling her without just cause, and placing that in her record. The Agency's

14   actions were pretext for discrimination, in order to retaliate against plaintiff and further

15   dissuade her and others from using the EEO process.

16

17   119. Plaintiff asserted that the on-gong pattern of illegal conduct by management,

18   including this latest EEO complaint filed in which Atkins attempted to dissuade the EEO

19   process, along with his prior negative comments about plaintiff in a public forum as the INC

20   of the Division where plaintiff's co-workers overheard, exacerbated her already hostile work

21   environment. This was the sixth EEO naming Atkins as a discriminating official.

22

23   120. The discriminatory and retaliatory conduct and ensuing HWE has caused

24   plaintiff mental and physical stress, including headaches, chest pains, high blood pressure,

25   anxiety, depression and sleeplessness, for which she has received medical treatment and

26   continues to receive treatment to date.

27

28

**Page 20 - COMPLAINT**

121.    On September 9, 2006, plaintiff received the Agency Final Agency Decision (FAD) dated September 5, 2006 (Agency No. 66-000-0037-06). The FAD dismissed the plaintiff's EEO for stating the same claim raised in a prior EEO claim involving the INC's comment (Agency No 6H-000-0001-06), and for failure to state a claim because she did not show that she suffered a harm or loss with a respect to a term, condition, or privilege of her employment as a result of the INCs' comment and the verbal counseling she received.  In regard to the Hostile Work Environment, (HWE) the FAD stated that the Plaintiff failed to show that the alleged incidents were "sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment." The FAD stated that that Plaintiff had 30 days to file an appeal to the Equal Employment Opportunity Commission (EEOC) within 30 calendar dates of the date of the receipt of the FAD.

122.    Plaintiff timely filed an appeal with the EEOC on or about October 4, 2006, addressing the Agency's FAD.  In her the appeal, plaintiff included a copy of an email she sent to the EEO counselor dated August 2, 2006, in which she stated that she was verbally counseled by Kovacs, that an email was disseminated to managers indicating that she had been counseled, that a copy of the email was placed in her Level 2 folder, and that a verbal counseling is the first step of disciplinary action with the next steps being progressive, to include a letter of warning, time off and then being fired.

123.    Plaintiff's appeal addressed that Atkins' negative comments about her were not included as a new claim of harassment, but were included to show the extent of the on-going HWE she was exposed to, and to place doubt on the reason Atkins approached plaintiff's supervisor about an allegedly rude and inappropriate email sent 11 days earlier, immediately

**Page 21 - COMPLAINT**

after Atkins was contacted by the EEO counselor Sutton.  Atkins' reasons for having plaintiff's supervisor take disciplinary action against her for an allegedly rude and inappropriate email was pre-text for discrimination.

124.    Plaintiff's appeal to the OFO pointed out the inadequate investigation by the Agency in that no documentation was provided by the agency to support what does or does not constitute disciplinary action.  Plaintiff also pointed out that her EEO was not viewed in conjunction with the 14 other EEOs she had filed at that time to show the on-going pattern of discrimination and a HWE, and the six prior EEOs naming Atkins as a discriminating official.

125.    The Agency provided plaintiff no documents in opposition of plaintiff's OFO appeal, showing the progressive steps of disciplinary action or what constitutes a pre-disciplinary interview.

126.    The Agency provided no documents in opposition of plaintiff's OFO appeal indicating that disciplinary action is disciplinary only if it is placed in an employees Official Personnel file (OPF).

127.    On February 26, 2007, plaintiff forwarded to the OFO in support of her appeal, a portion of EEOC AJ David Kelley's 11/30/06 Opinion and Order issued as a result of plaintiff's August 2004 eight day EEOC hearing. AJ Kelley's 11/30/06 Opinion and Order stated in part that the Agency was found liable for discrimination, harassment, retaliation and a sexually hostile work environment, ongoing for years. AJ Kelley's Opinion and Order also stated that plaintiff was the most credible witness while several agency witnesses were either impeached and/or found to be non-credible. The plaintiff asked the OFO to view the on-going

**Page 22 - COMPLAINT**

pattern of discrimination, harassment and retaliation, and the HWE, for which the agency was already found liable, when viewing her current EEO on appeal at the OFO.

128.    The OFO by letter dated June 28, 2007, received by plaintiff on or about July 6, 2007, affirmed the Agency's FAD (Appeal No 0120070109). The OFO dismissed the derogatory comment by INC because it stated this claim was raised in another EEO. The OFO dismissed the reminder of EEO for failure to state a claim because complaint was not aggrieved. The OFO stated there was no evidence the agency took any disciplinary or other adverse action against Plaintiff as a result of the counseling, that the counseling only amounted to a pre-disciplinary interview, and that nothing was placed in her personnel record. Plaintiff was advised she had 30 days from the date of receipt to file a Motion to Reconsider with the OFO.

129.    On July 19, 2007, plaintiff submitted a Motion to Reconsider to the OFO which included several documents that stated oral counseling/discussion is the first step in disciplinary/corrective action, with the final step being removal. Also included were documents showing that once a supervisor disseminates notes on an employee, they then become part of the employee's Level 2 folder. Documents provided by plaintiff also addressed that Level 2 records can contain disciplinary records and these records can be provided to an employees' subsequent supervisor, all adversely affecting her.

130.    The OFO responded to plaintiff's Motion to Reconsider by letter dated September 10, 2007, received by Plaintiff on September 22, 2007, denying plaintiff's the Motion to Reconsider (Appeal No 0120070109, Request No. 0520070784). The OFO advised that the plaintiff had 90 days to file a civil action in this case.

**Page 23 - COMPLAINT**

131.    The Agency did not provide plaintiff copies of any documents they submitted to the OFO in response to her October 4, 2006 appeal of the FAD, or her July 19, 2007 Motion to Reconsider to the OFO, even though plaintiff sent a letter to the Agency dated September 24, 2007, requesting that any records they sent to the OFO be provided to her.

132.    Plaintiff has exhausted administrative remedies under 42 U.S.C. 2000e-16(c) and 29 CFR 1614, and is filing this civil action within the required time-frame.

133.    Plaintiff appeals for a de novo trial to this federal court.

134.    Plaintiff timely complained of illegal discriminatory and retaliatory conduct for which she has been aggrieved, and has not been given any hearing nor permitted to conduct any discovery regarding the illegal conduct directed against her by the Defendant.

135.    From the time plaintiff first came forward with EEOs in 1998 up until August 2006, plaintiff's physician placed plaintiff off work for work-related stress leave on at least five separate occasions for work-related stress, in 2000, 2004, twice in 2005 and in 2006, as a result of the illegal conduct targeting her and the HWE. Plaintiff used her own sick leave for time away from work.

136.    Plaintiff has named INC Atkins as a discriminating official in 9 EEOs and she has named AIC Post and AIC Diaz as discriminating officials in 5 EEO complaints, from 2003 to date.

137.    INC Atkins and AIC Post have been named as discriminating officials by numerous other employees since their arrival as managers in the SF Division.

138.    Since 2003, INC Atkins has been named as a discriminating official in numerous EEOs in addition to those filed by plaintiff, including one EEO filed by a postal

**Page 24 - COMPLAINT**

inspector, in which Atkins and other managers in the USPIS were alleged to have attempted to dissuade the EEO process in May 2007, just prior to Atkins and Post's removal from their positions.

139.    On or about May 2007 INC Atkins and AIC Post were advised they were being removed from their positions.

140.    Plaintiff has established a prima facie case of retaliation by showing she engaged in activity protected by Title VII, the employer subjected her to an adverse employment decision by taking disciplinary action against her as pretext for discrimination which adversely affects her, and there is a causal link between the protected activity and the employer's action, which occurred within hours of finding out plaintiff would be filing another EEO.  The Defendant's actions viewed with other EEOs filed, supports plaintiff's HWE claim all in violation of Title VII of the Civil Rights Act of 1964, as amended, and that plaintiff's damages will be proven in an amount at trial.

## IV. JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues so triable.

## V. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays for and demands judgment against the Defendants as follows:

(a)    Compensatory damages, including back pay, loss of earnings, front pay, loss of benefits, loss of promotional opportunities, loss of career opportunities, lost earning capacity, embarrassment, humiliation loss of dignity, insult and damage to reputation and other consequential damages, in an amount to be determined at the trial of this cause;

**Page 25 - COMPLAINT**

(b)    Nominal damages;

(c)    For punitive damages against Defendants;

(d)    Reasonable attorney's fees and costs; and

(e)    Such further relief, including equitable relief as the Court deems just and proper.

DATED this **13th** day of December 2007

BY: _Judy A. McDermott_
Judy A. McDermott
Plaintiff, Pro Se
366 Hibiscus Lane
Suisun City, CA 94585
707/428-6513

VERIFICATION

I, JUDY A. MCDERMOTT, am the plaintiff in this action. I have read the foregoing
Complaint and know the contents thereof. All facts alleged in the above Complaint are true of
my own personal knowledge, except for those allegations made therein upon information and
belief and as to those allegations, I am informed and believe that each and all of them are true.
I declare under penalty of perjury and to the laws of the United States, at the foregoing is true
and correct and that this document was executed by me on December 13, 2007, at Oakland,
CA.

_Judy A. McDermott_
JUDY A. McDERMOTT
Plaintiff, Pro Se

**Page 26 - COMPLAINT**

## CERTIFICATE OF SERVICE

1    I am a citizen of the United States, over the age of 18 years, residing at 366 Hibiscus Lane,
2    Suisun City, CA 94585.

3    On the date of execution of this certificate of Service , I mailed a copy of the following
4    document(s):

5    **CIVIL COMPLAINT: JUDY A. MCDERMOTT  v. JOHN E. POTTER**
     **and SUMMONS**
6

7    TO:    Scott N. Schools                        (via certified mail # 7005 1820 0006 9127 7573)
            United States Attorney, Northern District of California
8           C/O Civil Process Clerk
            450 Golden Gate Avenue
9           Box 36055
10          San Francisco, CA 94102        415/436-7200

11          John Potter                           (via certified mail # 7005 1820 0006 9127 7580)
            Postmaster General, United States Postal Service
12          475 L'Enfant Plaza, SW
13          Washington, DC 20260        202/268-2000

14          Michael Mukasey               ( via certified #7003 1010 0002 1027 3454)
15          Attorney General
            Department of Justice
16          950 Pennsylvania Ave
            Washington DC 20530
17

18   I certify under penalty of perjury that the above is true and correct.

19

20   DATED: December 13, 2007        MAILED BY:    Judy A. McDermott
21                                                 366 Hibiscus Lane
22                                                 Suisun City, CA 94585
                                                   707/428-6513
23

24

25

26

27

28
     **Certificate of Service**
     **Judy A. McDermott v.**
     **John E. Potter**